ZBS LAW, LLP
Nichole L. Glowin, Esq. (SBN 262932)
30 Corporate Park, Suite 450
Irvine, CA 92606
Telephone: (714) 848-7920
bankruptcy@zbslaw.com

Attorneys for Secured Creditor, ABUNDANT INVESTMENTS, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>JEAN BARANOWSKI aka JEAN BARONESS BARANONSKI,<br><br><br>Debtor. | Case No.: 6:23-bk-13914-WJ<br><br>Chapter 13<br><br>**OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY**<br><br>**HEARING:**<br>DATE:    September 6, 2023<br>TIME:    2:30 PM<br>PLACE:   3420 Twelfth Street<br>         Riverside, CA 92501<br>         ***Courtroom 304*** |

ABUNDANT INVESTMENTS, LLC ("Secured Creditor") respectfully submits this Opposition to the above-entitled debtor's, JEAN BARANOWSKI aka JEAN BARONESS BARANONSKI ("Debtor"), Motion for Order Imposing a Stay or Continuing the Automatic Stay ("Motion to Impose Stay"). This Opposition to Debtor's Motion to Impose Stay is supported by the points and authorities cited herein, and the record currently before the Court.

### I.    STATEMENT OF FACTS

1.    On or about October 10, 2006, Debtor executed a Home Equity Line of Credit Agreement in the principal sum of $129,000.00 (the "HELOC") which was made payable to

1

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

Indymac Bank, FSB ("Lender"). The HELOC reflected that the subject interest rate was variable in nature and a maturity date of November 15, 2026. A copy of the HELOC is attached to the declaration as **Exhibit 1**.

2.      The performance of the HELOC is secured by a second position Deed of Trust (the "DOT") executed by the Debtor encumbering the real property commonly known as 107 Cachanilla Court, Palm Desert, CA 92260 (the "Property") recorded on October 20, 2006. A copy of the DOT is attached to the declaration as **Exhibit 2**. The HELOC and DOT are sometimes hereinafter collectively referred to as the "Loan."

3.      On May 6, 2014, a Corporate Assignment of Deed of Trust was recorded providing constructive notice in title that the DOT was assigned to Deutsche Bank National Trust Company as Trustee of the IndyMac Residential Asset-Backed Trust Series 2004-LH1 ("Assignment"). A copy of the Assignment is attached to the declaration as **Exhibit 3**.

4.      On December 11, 2019, a corrective Assignment of Deed of Trust was recorded providing constructive notice in title that the DOT was assigned to Deutsche Bank National Trust Company as Indenture Trustee of the IndyMac Home Equity Mortgage Loan Asset-Backed Trust Series 2007-H1 ("Deutsche Bank") (the "Corrective Assignment"). A copy of the Corrective Assignment is attached to the declaration as **Exhibit 4**.

5.      On December 11, 2019, an Assignment of Deed of Trust was recorded providing constructive notice in title that the DOT was assigned to Aspen Properties Group, LLC as Trustee of AG3 Recoverable Trust ("Aspen") (the "Aspen Assignment"). A true and correct copy of the Aspen Assignment is attached to the declaration as **Exhibit 5**.

6.      On February 2, 2021, a Corporate Assignment of Deed of Trust was recorded providing constructive notice in title that the DOT was assigned to Secured Creditor (the "Creditor Assignment").  A true and correct copy of the Creditor Assignment is attached to the declaration as **Exhibit 6**.

7.      Secured Creditor is the current owner of the Loan and current holder of the HELOC with standing to enforce said documents as authorized under federal and state law.

2

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

8.      On January 9, 2023, when Debtor was at least $177,292.46 in arrears on the Loan, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded. A copy of the NOD is attached to the declaration as **Exhibit 7**. Because Debtor did not cure the default, a Notice of Trustee's Sale was recorded on April 11, 2023 ("NTS").  A copy of the NTS is attached to the declaration as **Exhibit 8**.

9.      On April 19, 2023, Debtor filed a Complaint in the Superior Court of California, County of Riverside, as Case No. CVPS2301882, against Secured Creditor and Secured Creditor's foreclosure trustee, ZBS Law, LLP ("ZBS"), alleging several causes of action geared at preventing foreclosure on the Property (the "Civil Action"). Additionally, on May 5, 2023, Debtor filed an Ex Parte Application for a Temporary Restraining Order in the Civil Action to stop Secured Creditor's foreclosure ("TRO"). At the initial hearing on the TRO, the Court continued the matter to give the parties time to discuss the matter and determine if a resolution was possible. Secured Creditor agreed to postpone the May 11, 2023 foreclosure sale to June 13, 2023 to give Debtor time to apply for loss mitigation options. Debtor never returned or completed the loss mitigation application or provided any of the required documents to be considered for potential loss mitigation options. Thereafter, on June 12, 2023, the Court entered an Order denying Debtor's request for a TRO based on a lack of sufficient evidence ("TRO Denial Order"). True and correct copies of the Complaint and the TRO Denial Order are attached to the declaration as **Exhibits 9 and 10**, respectively.

10.      On the same day the TRO was denied and one-day before the scheduled foreclosure sale, on or about June 12, 2023, Debtor filed a bare bones petition under Chapter 13 of the Bankruptcy Code as Case Number 6:23-bk-12506-WJ ("First Bankruptcy Action").   Said case was dismissed on June 13, 2023, for Debtor's failure to obtain credit counseling prior to filing ("First BK Dismissal Order"). A copy of the docket for the First Bankruptcy Action and the First BK Dismissal Order are attached to the declaration as **Exhibit 11**.

11.      Due to the filing of the First Bankruptcy Action, Secured Creditor's foreclosure sale was postponed to July 13, 2023. One day prior to the scheduled sale, on July 12, 2023,

3

Debtor filed a second face sheet petition under Chapter 13 of the Bankruptcy Code as Case Number 6:23-bk-13045-WJ ("Second Bankruptcy Action"). A true and correct copy of the docket for the Second Bankruptcy Action is attached to the declaration as **Exhibit 12**.

12.     To further forestall foreclosure, on July 12, 2023, Debtor filed a second Ex Parte Application for a Temporary Restraining Order in the Civil Action ("2nd TRO"). On July 14, 2023, the Court in the Civil Action entered an order denying the 2nd TRO because 1) Secured Creditor was forced to postpone its foreclosure due to the filing of the Second Bankruptcy Action and 2) the Court indicated that Debtor's arguments had not changed from the initial TRO and that no cause existed to grant the 2nd TRO ("2nd TRO Denial Order"). A true and correct copy of the 2nd TRO and 2nd TRO Denial Order are attached to the declaration as **Exhibit 13**, collectively.

13.     The Second Bankruptcy Action was filed without multiple required and supporting documents. The clerk issued a deficiency notice on July 12, 2023 informing the Debtor that the balance of case initiation documents were due by July 26, 2023 [See **Exhibit 12** at Docket #1-1]. Additionally, the clerk's office also issued a 72-hour deficiency notice because the Debtor failed to file a statement of social security number or upload the creditors matrix. The clerk of the Court instructed the debtor to cure this deficiency by July 17, 2023 [See **Exhibit 12** at Docket #3]. The Debtor did not file a social security statement with a holographic signature by the deadline. Therefore, on July 24, 2023, the clerk of the Court entered an order dismissing the Second Bankruptcy Action for failure to file documents ("Second BK Dismissal Order"). A true and correct copy of the Second BK Dismissal Order is attached to the declaration as **Exhibit 14**.

14.     Following the entry of the Second BK Dismissal Order, Debtor filed a series of pleadings attempting to vacate the dismissal and to reinstate the bankruptcy case (collectively hereinafter referred to as the "Motion to Vacate") (See **Exhibit 12** at Docket Nos. 24, 25, 29, 30, 32, 33, 35 & 37).  On August 16, 2023, the Court issued a memorandum of decision ("Memo") and order ("Order Denying Motion to Vacate") denying the Motion to Vacate because 1) Debtor had not properly served the various Motion to Vacate pleadings; 2) Debtor had not provided

4

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

grounds to support the extraordinary remedy to vacate the dismissal and 3) Debtor had already filed a new and third bankruptcy proceeding. True and correct copies of the Memo and the Order Denying Motion to Vacate are attached to the declaration as **Exhibit 15**, collectively.

15.     While Debtor's Motion to Vacate the dismissal of the Second Bankruptcy Action was pending, and to further forestall foreclosure, on August 14, 2023, Debtor filed a third face-sheet bankruptcy petition as Case Number 6:23-bk-13624-WJ ("Third Bankruptcy Action"). A true and correct copy of the docket for the Third Bankruptcy Action is attached to the declaration as **Exhibit 16**.

16.     The Third Bankruptcy Action was filed without several integral documents and the clerk issued a deficiency notice on August 15, 2023 informing the Debtor that the balance of case initiation documents were due by August 28, 2023 [See **Exhibit 16** at Docket #1 & #9]. Additionally, the clerk's office also issued a 72-hour deficiency notice because the Debtor failed to upload the creditors matrix. The clerk of the Court instructed the debtor to cure this deficiency by August 18, 2023 [See **Exhibit 16** at Docket #10]. The Debtor did not file a correct creditors matrix timely. Therefore, on August 21, 2023, the clerk of the Court entered an order dismissing the Third Bankruptcy Action for failure to file documents ("Third BK Dismissal Order"). A true and correct copy of the Third BK Dismissal Order is attached to the declaration as **Exhibit 17**.

17.     Following the entry of the Third BK Dismissal Order, Debtor filed a series of pleadings attempting to vacate the dismissal and to reinstate the bankruptcy case (collectively hereinafter referred to as the "2nd Motion to Vacate") (See **Exhibit 16** at Docket Nos. 22, 23, 25 & 26). On September 1, 2023, the Court issued a memorandum of decision ("2nd Memo") and order ("Order Denying 2nd Motion to Vacate") denying the 2nd Motion to Vacate because 1) Debtor had not properly served the various Motion to Vacate pleadings; 2) Debtor had not provided grounds to support the extraordinary remedy to vacate the dismissal and 3) Debtor had already filed a new and fourth bankruptcy proceeding. True and correct copies of the 2nd Memo and the Order Denying 2nd Motion to Vacate are attached to the declaration as **Exhibit 18**, collectively.

5

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

18.    Prior to the denial of the 2nd Motion to Vacate, Debtor filed schedules in the Third Bankruptcy Action which reflected that 1) the Property is valued at $975,000.00 (Schedule A); 2) that she owns a 2001 BMW (Schedule A); 3) that the Property is encumbered by a $570,000.00 first position lien in favor of PHH ("PHH Lien") and Creditor's Deed of Trust (Schedule D); 4) that Debtor owes $35,000.00 to the Franchise Tax Board and $80,250.00 to the IRS (Schedules E/F); 5) that Debtor earns $6,587.00 monthly from her job, social security and rental income generated by the Property (Schedule I) and 6) that Debtor has $1,707.00 in disposable monthly income to fund a Plan (Schedule J). True and correct copies of the Schedules A, D, E/F, I & J filed in the Third Bankruptcy Action are attached to the declaration as **Exhibit 19**, collectively.

19.    While Debtor's 2nd Motion to Vacate the dismissal of the Third Bankruptcy Action was pending, and to further forestall foreclosure, on August 30, 2023, Debtor filed her fourth and instant bankruptcy petition as Case Number 6:23-bk-13914-WJ ("Fourth Bankruptcy Action"). A true and correct copy of the docket for the Fourth Bankruptcy Action is attached to the declaration as **Exhibit 20**.

20.    Debtor's Schedules filed in the Fourth Bankruptcy Action reflect that 1) the Property is valued at $975,000.00 (Schedule A); 2) that she owns a 2001 BMW (Schedule A); 3) that the Property is encumbered by a $570,000.00 first position lien in favor of PHH ("PHH Lien") and Creditor's Deed of Trust (Schedule D); 4) that Debtor owes $35,000.00 to the Franchise Tax Board and $80,250.00 to the IRS (Schedules E/F); 5) that Debtor earns $6,587.00 monthly from her job, social security and rental income generated by the Property (Schedule I) and 6) that Debtor has $1,707.00 in disposable monthly income to fund a Plan (Schedule J). True and correct copies of the Schedules A, D, E/F, I & J filed in the Fourth Bankruptcy Action are attached to the declaration as **Exhibit 21**, collectively.

21.    Debtors proposed Chapter 13 Plan filed in the Fourth Bankruptcy Action requires step payments beginning with $1,000.00 months 1-6 and increasing to $1,200.00 months 7-12, $2,500.00 months 13 to 36 and $4,000.00 months 37 to 60 ("Plan"). The proposed Plan proposes

6

to repay $35,000.00 in priority debt to the IRS, to remain "current" on payments to the first position lienholder PHH and to bifurcate Creditor's lien to $115,000.00 to be repaid at 0% over 60 months. A true and correct copy of Debtor's Plan filed in the Fourth Bankruptcy Action is attached to the declaration as **Exhibit 22**.

22.     On August 30, 2023, Debtor filed the operative Motion to Impose the automatic stay in the Fourth Bankruptcy Action as Docket No. 13.

## II.    <u>ARGUMENT</u>

The records of the Bankruptcy Court clearly establish that Debtor filed four consecutive Chapter 13 bankruptcy petitions within a 12-month period (i.e. the First, Second, Third & Fourth Bankruptcy Actions). Debtor's Motion to Impose Stay does not refute Debtor's serial filings, rather, it attempts to argue that sufficient cause exists to impose an automatic stay in the Fourth Bankruptcy Action and that the Fourth Bankruptcy Action was filed in good faith. As discussed below, the Court should deny Debtor's Motion to Impose Stay as Debtor has not met her burden to impose the automatic stay, has provided no evidence of her ability to re-organize and has filed the Fourth Bankruptcy Action solely to delay Secured Creditor's foreclosure rights.

## A.    DEBTOR IS NOT ENTITLED TO IMPOSITION OF THE AUTOMATIC STAY

### 1.    Legal Standard.

Section 362(c)(4)(A)(i) of the Bankruptcy Code provides, in pertinent part:
> If a single or joint case is filed by or against debtor who is an individual in a case under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed…a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed,…the stay under [§362(a)] shall not go into effect upon the filing of the later case...

11 U.S.C. § 362(c)(4)(A)(i). If within 30 days after the filing of the later case, a party in interest request, "the court *may* order the stay to take effect in the case as to any or all creditors…after notice and a hearing *only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed."* 11 U.S.C. §362(c)(4)(B) (emphasis added). A case is presumptively not filed in good faith:
> (i) as to all creditors, if:

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

(I) 2 or more previous cases under this title in which the individual was a debtor were pending within the preceding 1-year period;

(II) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph, after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse …, failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed…

11 U.S.C. § 363(c)(4)(D)(i)(I)-(III). The debtor bears the ultimate burden of persuasion to demonstrate through ***clear and convincing evidence to the contrary*** that the presumption of bad faith does not apply. *In re Casteneda*, 342 B.R. 90, 94 (Bankr. S.D. Cal. 2006); 11 U.S.C. § 362(c)(4)(D).

### 2.	This Case Was Presumptively Filed in Bad Faith

The instant case was presumptively filed in bad faith as a matter of fact and law. First, the presumption arises because the First Bankruptcy Action, Second Bankruptcy Action and Third Bankruptcy Action were pending within the preceding year of the filing of this case (the Third Bankruptcy Action). *See* 11 U.S.C. § 362(c)(4)(D)(i)(I). Second, the presumption arises as the Second and Third Bankruptcy Actions were dismissed for Debtor's failure to timely file necessary documents. *See* 11 U.S.C. § 362(c)(4)(D)(i)(II). Finally, the presumption also arises as Debtor's Motion to Impose the Stay does not highlight any change in Debtor's personal finances guaranteeing a successful re-organization. Debtor's Motion to Impose the Stay contains no allegations regarding any change, but simply asserts that her prior filings were not in bad faith as they resulted from "attorney error," that there is equity in the Property that makes it valuable to the estate and that she intends on "selling" the Property. While counsel error may have been at play in Debtor's filing history; such errors do not change the fact that Debtor calculatingly filed for bankruptcy relief solely to prevent Creditor's foreclosure and without means to successfully

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

re-organize. As discussed below, Debtor's Schedules filed in the Fourth Bankruptcy Action include severely under-stated necessary living expenses and disposable income falling far short of the proposed step payments and/or the amounts necessary to satisfy her priority and secured creditor claims. Debtor's Chapter 13 Plan proposes no sale of the Property, but rather an intent to retain the asset and bifurcate Creditor's claim, which cannot be undertaken under 11 U.S.C. § 506. To further complicate matters, Debtor's Schedules omit several secured tax liens on the Property, which make a sale unfeasible. Debtor's failure to address her incongruent re-organization plans and failure to properly support her income tell the true tale; that Debtor cannot re-organize and that she has filed for bankruptcy relief to delay the inevitable. Debtor has the burden of establishing by *clear and convincing evidence* that this case was filed in good faith. Debtor has not and cannot do so.

> **3.      Debtor Fails to Rebut the Presumption that the Third Bankruptcy Action Was Filed in Bad Faith**

"In this circuit, the "totality of circumstances" test for determining whether a debtor filed a chapter 13 case in good faith includes: 1) whether debtor misrepresented facts in the petition or the plan, unfairly manipulated the Code or otherwise filed the current chapter 13 plan or petition in an inequitable manner; 2) debtor's history of filings and dismissals; 3) whether debtor only intended to defeat state court litigation; and 4) whether egregious behavior is present. In *In re Leavitt,* 171 F.3d 1219, 1224 (9th Cir.1999); *see also In re Villanueva,* 274 B.R. 836, 841 (9th Cir.BAP2002)(listing factors to evaluate whether a chapter 13 plan has been proposed in good faith). *In re Castaneda*, 342 B.R. 90, 96 (Bankr. S.D. Cal. 2006).

"Mere statements by the movant in the motion do not carry any evidentiary weight." *Wilson,* 336 B.R. at 347–48. The movant must provide detailed, competent, evidence sufficient to satisfy all elements of § 362(c)(4)(B) and, if applicable, to rebut the presumption of bad faith in §§ 362(c)(4)(D)(i)(I)- (III). The evidence must be filed and served with the motion so that creditors can evaluate the integrity of the current case, and so that the Court can determine under

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

the applicable evidentiary standard whether the later case was filed in good faith. *Wilson,* 336 B.R. at 348–49. *In re Castaneda*, 342 B.R. 90, 96 (Bankr. S.D. Cal. 2006).

Debtor's Motion to Impose Stay attempts to frame the history of bankruptcy filings affecting the Property as a series of unfortunate events. Specifically, Debtor indicates the First Bankruptcy Action was dismissed due to lack of counsel and that the Second and Third Bankruptcy Actions were dismissed due to "attorney error." Neither of these explanations exculpate the Debtor or evidence good faith. Debtor achieved her goal of stopping Movant's initial foreclosure sale by filing the First Bankruptcy Action and chose to proceed in that case without assistance of counsel. Likewise, the clerk of the Court issued several clear notices in the Second and Third Bankruptcy Actions regarding documents to be filed and the consequences of not doing so, yet, Debtor did not timely comply. Furthermore, Debtor's Motion to Impose Stay includes no real excuse for her inaction or to show dismissal resulted from error. To add insult to injury Debtor's Motion to Impose fails to address her actions within and outside of the bankruptcy Court geared at stopping Secured Creditor's foreclosure. Debtor's silence is telling as three failed Chapter 13 filings, two failed attempts for a temporary restraining order and one pending Civil Action in a one-year period establish nothing more than an intent to delay the inevitable.

If the Court were somehow able to overcome the bad faith filing history affecting the Property and Debtor's role therein; the totality of the circumstances analysis would still merit denial of Debtor's Motion to Impose Stay. Debtor's Motion to Impose does not articulate or offer evidence to prove that her personal or financial affairs have changed to a degree sufficient to permit successful reorganization. Debtor's schedules filed in the Third Bankruptcy Action and in this current Fourth Bankruptcy Action, are identical and reflect no change in Debtor's financial circumstances to rebut the presumption of bad faith:

| | Schedule J Income | Schedule I Expenses | Necessary Expenses Excluded from Schedule I | Disposable Income to Fund Chapter 13 Plan |
|---|---|---|---|---|
| | | | | |

10

| Third Bankruptcy Action (prior case) | $2,539.33- Wages $3,160.00-Rental Income $1,100.00- SSI *Total: $6,587.00* | $2,800.00- Mortgage $900.00- Renters Insurance $100.00-Home Repair $118.00- HOA dues $724.00- Additional Mortgage $38.00-Water $100.00- Food $100.00- Clothing *Total: $4,880.00* | Electricity/gas-$0.00 Telephone/cell-$0.00 Personal Care-$0.00 Entertainment-$0.00 Transportation-$0.00 Car Insurance-$0.00 | $1,707.00 |
|---|---|---|---|---|
| Fourth Bankruptcy Action (current case) | $2,539.33- Wages $3,160.00-Rental Income $1,100.00- SSI *Total: $6,587.00* | $2,800.00- Mortgage $900.00- Renters Insurance $100.00-Home Repair $118.00- HOA dues $724.00- Additional Mortgage $38.00-Water $100.00- Food $100.00- Clothing *Total: $4,880.00* | Electricity/gas-$0.00 Telephone/cell-$0.00 Personal Care-$0.00 Entertainment-$0.00 Transportation-$0.00 Car Insurance-$0.00 | $1,707.00 |

See **Exhibits 19 and 21** attached hereto, Debtor's Schedules filed in the Third and Fourth Bankruptcy Actions. Debtor's monthly disposable income is also severely inflated as her Schedule J fails to deduct necessary expenses for items such as electricity, gas, phone/internet, personal care, entertainment, or transportation (gas and vehicle insurance for Debtor's BMW). It is therefore impossible to establish that Debtor can re-organize in her Fourth Bankruptcy Action

11

without a reasonable expense budget or substantiation of her monthly income. Even if Debtor could amend or clarify these discrepancies, the fact remains that her disposable income is insufficient to support re-organization.

Secured Creditor's second position HELOC and DOT mature during the term of the Fourth Bankruptcy Action, on or about November 15, 2026, and as such, must be repaid in full. Pursuant to Secured Creditor's most recent payoff quote dated August 10, 2023, the amount due under the HELOC and DOT totals $278,867.54 (See Creditors Declaration filed concurrently herewith at ¶ 29). Accordingly, without accounting for the HELOC interest rate, Debtor's payments or arrearages on the first position mortgage, the $35,000.00 + in priority debt owed to the California Franchise Tax Board and IRS, attorneys' fees or administrative trustee fees, Debtor would need to contribute $4,647.79 per month just to repay the base amount of Secured Creditor's claim. This hefty Plan payment requires proof of income that Debtor has completely failed to address despite having a responsibility and venue to do so.  Indeed, Debtor's proposed $1,000.00-$4,000.00 monthly step plan payments are well-under the amount needed to satisfy Creditor's claim, and far exceed her $1,707.00 in monthly disposable income.

Debtor's Motion tries to subvert her lack of income by hinting at "equity" in the Property and a potential "sale;" neither of which are supported by any facts. Debtor's current Plan does not include any sale provisions and indicates that that Debtor will retain the Property as an asset, maintain payments on the 1st lien and will "bifurcate" Creditor's lien. Debtor cannot complete bifurcation under 11 U.S.C. § 506 given the $975,000.00 value listed in Schedule A, the $570,000.00 PHH First Lien listed in Schedule D and the fact that Creditor's $278,867.54 second position lien is wholly secured. Thus, Debtor must fully address Creditor's claim; a feat which she cannot accomplish under her current income stream of $1,707.00 per month. A sale will not remedy Debtor's feasibility hurdles as Debtor's Schedule D omits several tax and other liens secured by the Property that diminish the equity in the Property. Specifically, Creditor's Trustee's Sale Guarantee ("TSG") reflects the following liens secured by the Property:

12

| Lienholder | Date Lien Recorded | Recording Instrument Number | Amount in Schedules or on TSG |
|---|---|---|---|
| PHH (1st lienholder) | 07/05/2006 | 2006-0515643 | $570,000.00 (Schedule D & TSG Item 8) |
| Creditor (2nd lienholder) | 10/10/2006 | 2006-0774014 | $278,867.54 (See Creditors Declaration filed concurrently herewith at ¶ 29, **Exhibit 23** attached hereto & TSG Item 9) |
| Capital One Bank, N.A. (Judgment Lien) | 06/27/2017 | 2017-0255988 | $6,463.68 (TSG Item 13) |
| California Franchise Tax Board | 02/05/2018 | 2018-0043689 | $26,982.02 (TSG Item 14) |
| Internal Revenue Service | 10/31/2018 | 2018-0429660 | $80,244.45 (TSG Item 15) |
| California Franchise Tax Board | 10/07/2019 | 2019-0399294 | $33,971.38 (TSG Item 16) |
| California Franchise Tax Board | 10/28/2020 | 2020-0523394 | $22,509.07 (TSG Item 17) |
| **TOTAL OF ALL LIENS:  $1,019,038.14** | | | |

A true and correct copy of the TSG evidencing the above liens is attached hereto as **Exhibit 24**. The combination of liens eclipse the $975,000.00 Property value by over $44,038.14, leaving nothing for creditors or the debtor. No party has agreed to accept less than a full payoff and Debtor has provided no evidence of negotiations in this vein. In light of the foregoing, there is no proof or evidence to reasonably establish that Debtor will be able to propose a feasible Plan via sale or otherwise.  Based on this lack of feasibility, it appears extremely unlikely that the instant case will result in a confirmed Chapter 13 Plan that will be fully performed.  Debtor has therefore failed to meet the burden of proof necessary to overcome the presumption that the instant case was not filed in good faith and Debtor's Motion to Impose Stay should be denied.

### III.   CONCLUSION

Debtor's Motion to Impose Stay to extend the automatic stay herein should be denied in its entirety due to Debtor's failure to offer clear and convincing evidence rebutting the presumption of bad faith. Furthermore, there is insufficient evidence to demonstrate a substantial change in Debtor's financial circumstances and/or proof that Debtor will complete a feasible Plan due to Debtor's unsubstantiated income and high expenses.

13

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY

WHEREFORE, Secured Creditor respectfully request that:

1.     That Debtor's Motion to Impose the Stay in the instant bankruptcy case is denied in its entirety;

2.     For other such relief as this Court deems just and proper.

Dated: September 5, 2023                    ZBS LAW, LLP

                                            By: /s/ Nichole L. Glowin
                                                Nichole L. Glowin, Esq.
                                                Attorneys for Secured Creditor,
                                                ABUNDANT INVESTMENTS, LLC

14

OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR
CONTINUING THE AUTOMATIC STAY